Lqring-, J.,
delivered the opinion of the court:
The petitioners claim the net proceeds of seven hundred and fifty-one bales of cotton.
The effect of the circumstances relied on in this case to p>rove disloyalty, is substantially the same which was shown and considered in the case of Edward Padelford v. The United States, (4 C. Cls. R., 316.) And it was held in that case that they did not disprove loyalty or prove voluntary aid to the rebellion.
At the trial of this case the claimants, to prove their loyalty, -offered in evidence the oath taken in pursuance of the President’s proclamation of December 8,1863, providing pardon and amnesty for those who aided the rebellion. It was objected on the p>art of the defendants that the oath was not admissible here by the statute of 1870, chap). 251, and we are of that opinion.
The motion brings into consideration the pmrpwses of the third section of the Act V2,th March, 1863, and its auxiliary acts, and the issue they form for trial here; and it involves the construction of the act of 1870, so far as its provisions affect this -case. ■
*264 The third section of the Act 12th March, 1863, required the claimant to prove that he had never given aid or comfort to the rebellion. The third section of the Act 2oth June, 1868, required the claimant to prove, affirmatively, that he did during the rebellion consistently adhere to the United States, and did give no aid or comfort to persons engaged in said rebellion. And in the case of The United States v. Padelford, (9 Wal., 531,) the Supreme Court said: “The particular description of proof required by the later act seems to be included in the more general description of the former.’7 And the practice of this court had been always in conformity with that decision before it was made. Under this construction of the Act 12th March, 1863, the claimant under it is to prove affirmatively that he never gave aid or comfort to the rebellion.
In the case of John F. Pargoud, (4 C. Cls. R., p. 337,) this court decided that the third section of the Act 12th March, 1863, in requiring the claimant to prove that he never aided the rebellion, contemplated the fact and not the crime of aiding the rebellion, and that pardon and amnesty, which can prove nothing affirmatively, but that they were granted according to their tenor, if they purged the crime, could not alter or affect the fact, and were therefore inefficient and inadmissible evidence for the claimant.
The difference between the fact and the crime is as practical as it is plain. The fact, or thing done, may affect third persons and be material to them; Avhile the crime, or legal quality of the thing done, is a matter merely between the criminal and the law, and affects nobody but himself. Thus in 1863, when the struggle of the civil Avar Avas at its height, the fact of aiding the rebellion directly affected and injured the United States as a belligerent; and it Avas their manifest and most essential policy to induce and confirm loyalty at the South by rewarding it; Avhile the crime of aiding the rebellion, as a mere offence against the law, Avas no more material to the United States than a burglaiy or arson in any northern city. In these circumstances the third section of the Act 12th March, 1863, was passed, and offered to those avIio neA'er gave aid or comfort to the rebellion the net proceeds of their captured property.
In the case of The United States v. Padelford, (9 Wal., 531,) the Supreme Court overruled the decision of this court, and decided that the third section of the act of 1863 contemplated. *265 not the fact but tbe crime of aiding tlie rebellion, and therefore that pardon and amnesty, as they purged the' crime, were admissible and efficient evidence for the claimant, and entitled him to a recovery.
The decision of the Supreme Court declared conclusively the intent of the statute, but not-necessarily the intent of Congress in enacting it, for it might be that the statute, from the impor fection of its terms, referred to the crime of aiding the rebellion, while Congress in enacting it contemplated the fact of aiding the rebellion; and the statute of 1870 declares that such was the case, and it changes the law and enacts that disproof of the fact of aiding the rebellion is the matter to be required of a claimant here, for it declares that the loyalty required by the statutes shall be proved “irrespective of the effect of pardon and amnesty,” &c. And this can only be done by proof that the claimant never in fact aided the rebellion,’ and this makes the issue here on which the evidence of the oath is offered and in reference to which its admissibility, is to be considered.
The act of 1870, in changing the issue, changes the evidence; it excludes consideration of the crime and the evidence, which in contemplation of law is the badge of the crime; for the law tenders the oath only to those who have committed the crime, and the statute' of 1870 enacts that the oath shall not be u admissible” in evidence here “ to support any claim against the United States, or to establish the standing of any claimant in said court, or his right to bring or maintain any suit therein.” "We think this clear and express prohibition is what, and all that the statute applies to this case.
The argument for the claimant was that, while the statute prohibited the admission of the oath, it provided that loyalty should be proved, “irrespective of the effect of any executive . proclamation, pardon, amnesty, of other act of condonation and hence the inference arose, (taking the prohibition and the provision cited together,) that the intent of the statute was that the oath should not be used to prove a condonation, but might be used for any other purpose, such as the claimant’s loyalty or adherence to the United States. But we think the statute cannot be so construed, for it applies the prohibition as here cited, and the provision on which the inference is rested, to different classes of cases, and to the class to which this case belongs it applies only tlie prohibition. The statute divides ’ *266 the cases into two classes: First, those in which the oath is first -offered in evidence, after the enactment of the statute; and second, those in which the oath had been offered and admitted in evidence before the enactment of the statute; and to-the first class it applies the prohibition without more.
The statute then turns to the other class of cases, where the oath had been, in the words of the statute, “heretofore offered or put in evidence,” so that before the enactment of the statute it was already in the case and made a part of its evidence for all its legal effects. And it declares as to this class of cases that the oath shall not be “used” or “considered” by the court, but that proof of loyalty shall be made by proof of the matters required by the statute, “irrespective of pardon, amnesty, &c., or other act of condonation.” And these words are to be construed in reference to the circumstances which had preceded and induced the statute. The decision of the Supreme Court had given a particular effect to the evidence in question, by deciding that the law made pardon and amnesty “a complete substitute for proof that he (the claimant) gave no aid or comfort to the rebellion,” and that the oath taken and'kept, of its own force pledged to rebels “the faith of the government” for the restoration of their captured property. And these effects had already, and before the enactment of the statute, attached in the cases in which the evidence had been offered and admitted, and to which the clause of the statute in question by its collocation refers, and we think its only purpose was to annul these effects in those cases, and not to provide for other cases, or to qualify the prohibition it had so distinctly made before.
And in this case the oath was offered in evidence to prove the claimant’s loyalty, or his adherence to the United States: it .was so stated at the trial, and it is so printed in the brief of counsel. And the statute declares in terms that the oath shall not be used for that purpose. It says it shall not be “admissible to establish the standing of any claimant in said court,” and that means loyalty or adherence to the United States. And we think it was the intent of the statute to exclude, in all cases subsequently for trial here, the admission or consideration of the oath to prove loyalty or the adherence of the claimant to the United States, and that this conforms to the spirit and purpose of the statute as shown by other clauses, for the last *267 clause of the statute makes pardon, accepted without protest, proof of the fact that the claimant aided the rebellion, and the oath taken and kept is pardon, by force of the President’s proclamation.
And it is to be recollected that, under the construction which the act of 1870 makes of the third section of the Act 12th March, 1863, viz, that it contemplates the fact and not the crime of aiding the rebellion, the purpose of that section was to induce loyalty in those whom the government could not protect, by assuring to them-, on the condition that they never in fact aided the rebellion, the net proceeds of property captured from them jure belli, and thus, though without fault of their own, .absolutely divested from them and vested in the United States. And such restitution is as purely a mere bounty for steadfast loyalty as a pension .promised and paid from the Treasury would have been.
Óur government treated the struggle between the United States and the Confederate States both as a civil war and as a rebellion, and the people of the Confederate States both as belligerents and as criminals; ,and the practical and extended consequences of this distinction were carefully provided for by the tw.o different statutes, {17th July, 1862, and 12th March, 1863.) The former of these acts is entitled “An act to suppress insurrection, and to punish treason and rebellion; to seize and confiscate the property of rebels, and for other purposes.” And it provides for the punishment of rebels and the confiscation of their property on their trial and conviction. It is purely a ■criminal statute, and is committed to courts of criminal jurisdiction.
The Act 12th March, 1863, is entitled “An act to provide for ■the collection of abandoned property, and.for the prevention of fraxids in insurrectionary districts within the United States.” And, as its provisions show, its general purpose is to secure to the United States property abandoned by and captured from belligerents. *
Under the Act 17th July, 1862, the United States acquired title to the property of convicted criminals, by its confiscation for their crimes, upon a judgment of court, under the criminal law. And such title might be divested by pardon and amnesty, which are a part of that law. Under this statute the United States treated the confederates merely as rebels.
*268 Under the Act 1211i March, 1863, the United States appropriated to themselves the property captured by their military forces in the Confederate States, and thus treated them as belligerents in a territorial Avar, in Avhich every citizen of the hostile territory, Avhether personally loyal or disloyal, Avas an enemy Avhose property Avas subject to capture according to the laws of war. And that this Avas rightfully done was decided by the Supreme Court in the prize cases, (2 Black, 2G5;) and in the cases of Mrs. Alexander’s cotton, (2 Wal., 404.,) and of The United States v. Anderson, (9 Wal., 56,) and of The United States v. Padelford, (9 Wal., 531.) And if such right of capture was the consequence of such territorial war, the right continued Avhjle the war continued; and this was until the 20th of August, 1866, by the decision of the Supreme Court in The United States v. Anderson.
And such capture made, and now makes, the only title of the United States to such property, and their only right to appropriate or use it. For it is not possible to hold judicially that the military seizure and the appropriation of such property by the government was, in any way or degree, a punishment for offences against the laws of the United States; for by those laws the property of a criminal cannot be confiscated for his crime, except by a judgment of a court of competent jurisdiction.
And enemy’s property captured in enemy’s territory belongs, by the laAvs of Avar, as absolutely to the captor as if he had purchased it; for it reimburses to him his losses and expenses by the Avar, and is his lawful means of weakening and subduing his enemy. And it is absolutely divested from the belligerent from AAdioin it is captured, and he has no claim, legal or moral, to its restitution. The United States therefore held the title of such property, and its whole title, legal aud equitable, in their own sole right, and were free to dispose of it as they pleased, and as their interests dictated. And by the third section of the Act 12th March, ÍS63, the United States, combining policy with justice and mercy, appropriated' it, after planing it in their Treasury, as a bounty for steadfast loyalty, as a reward for that course of conduct Avhich would secure an essential and immediate benefit to them, and which circumstances made difficult, perilous, and eminently meritorious in those maintaining it.
*269 Ancl if sucli was tbe purpose of tbe third section of tbe Act 12th March, 1863, their the distribution of tbe property it provides for was, as .has been said, as purely a bounty to steadfast loyalty as would have been a pension promised and paid from tbe Treasury. And if it was a bounty in tbe disposition of their own property, then tbe United States might certainly condition it on what they pleased; and they might well, and in conformity to tbe spirit and purpose of tbe third section of tbe Act 12th March, 1863, confine it to those who never, in fact, aided tbe rebellion. And they might by statute prescribe such evidence for proof of that fact as is within tbe legislative power of Congress. And we understand that such was tbe purpose of tbe act of 1870, which provides only for proof of a fact on which bounty is conditioned, and acts in no way on the crime of aiding the rebellion or its punishment or pardon, or the effect of pardon on the crime. For these reasons we refuse to admit the evidence offered.
Subsequently the court found upon the merits for the claimants, and rendered judgment for $131,146 84.